## Case No. 336c.

### In re AMORY and LEEDS.

[Betts' Ser. Bk. 113.]

Circuit Court, S. D. New York. 1844.[1]

BANKRUPTCY —ILLEGAL PREFERENCES AND TRANSFERS—ACT OF 1841—DISCHARGE.

[1. The receipt by certain creditors of an insolvent partnership of money and other assets of a composition and compromise of their claims, and in full discharge thereof, is a preference, within the prohibition of the bankruptcy act of August 19, 1841, (5 Stat. 440, c. 9,) when it appears that other creditors got nothing, and that the settlement was made after January 1, 1841, and prior to and in contemplation of the passage of the act, with the general authority and concurrence of both partners, though no particular acts are proved against one of them. In re Amory and Leeds, Case No. 336b, affirmed.]

[See In re Amory and Leeds, 336b, note.]

[2. Similar settlements with certain creditors, to the exclusion of others, made after the act of 1841 went into effect, are preferences, within the prohibition of that act. In re Amory and Leeds, Case No. 336b, affirmed.]

[3. Preferences of certain creditors, to the exclusion of others, are not exempted from the prohibition of the bankrupt act of 1841 because obtained through the urgent demands of such creditors, or by means of threats to bring actions for their claims. In re Amory and Leeds, Case No. 336b, affirmed.]

[4. Such preferences are within the prohibition of the law, although the bankrupt originally offered to compromise with all his creditors at a fixed and equal ratio; especially when the compromises actually obtained were not in a uniform ratio.]

[In bankruptcy. In the matter of Jonathan Amory and Henry H. Leeds. Certificates of discharge which had been taken out were vacated, (In re Amory and Leeds, Case No. 336a;) and discharges were thereafter refused, (Id., Case No. 336b.) The bankrupts appeal. Affirmed.]

In the matter of Jonathan Amory and Henry H. Leeds, bankrupts.

The court [below] denied the application for the discharges on the grounds—

1st. That the debtors as partners, after the 1st of January, 1841, had compromised with certain of their creditors and obtained releases therefrom by paying part of their respective debts in cash, or by transfer of assets of the house equivalent to cash, while numerous other creditors were left unpaid in whole or part, thereby giving a preference to a portion of the creditors of the house, in contravention of the bankrupt law.

2d. That after the passage of the bankrupt law, and after the same went into operation and effect, the bankrupts, in contemplation of bankruptcy, in like manner compounded and settled with certain of their creditors by payment in part, either in cash or by transfer of assets of the house, and obtained releases therefrom whilst other creditors were left unpaid, whereby preference was given to particular creditors, con-

---

[1][Affirming In re Amory, Case No. 336b.]

trary to the provisions of the bankrupt law.

3d. The court below further held, that giving preference to particulars as aforesaid, by reason of the urgent and pressing demands of the creditors, or threats of bringing suit to recover their debts, did not exempt the act from the prohibition of the provisions of the law.

I have reviewed the case on appeal, after the benefit of a full argument by the learned counsel, on the part of the petitioners and creditors, and am entirely satisfied that the conclusion at which the court below arrived, both as to the facts and law, are well founded, and the discharges are properly denied. That preferences were given to certain creditors by the bankrupts in making payments by the way of compromise, after the 1st January, 1841, after the passage of the law, and even after the same went into operation, and when the house was hopelessly insolvent, is not denied. But it is supposed that the offer by the bankrupts to all of their creditors, as originally made, to put them on an equal footing in the general compromise, if they would come in, accept the 16½ per cent., and release their debts, takes the case out of the prohibition against the preferences in the law, as this offer was in the spirit of that law, and contemplated a distribution of the assets in conformity to, its provisions. But the answer is, the creditors were not bound to accept the compromise, and were at liberty to put themselves upon their legal rights, whatever they might be. The offer of compromise neither abridged these rights, as respects the bankrupt law, nor conferred upon the debtors the privilege of controverting any of its provisions. The refusal of any one creditor left both the creditor and debtor, as it respected their relative position and rights, the same as if no such compromise had been tendered. Any other conclusion would enable the bankrupt either to force his creditors into a compromise, or legalize any preference he might choose to make to favored assenting creditors, though in contravention of the express inhibition of the bankrupt act. Again, the payments made in point of fact, in effecting the compromise by the bankrupts, varied as to the amount, according as arrangements could be made with each particular creditor — some realizing more, some less, ranging, I believe, from 10 to 50 per cent. and some even at par; at all events, no uniform pro rata distribution of the assets was offered in compounding with the creditors. But apparently such per cent. advanced or secured by transfer of assets as was exacted by the creditor before he would consent to discharge his demand.

I am also satisfied from the evidence in the case, that these preferences were made in favor of creditors who would consent to release their demands after 1st of Jan. 1841, and before the passing of the bankrupt law, in contemplation of the passing of that law,

a threat having been held out by the bankrupts of an intention to take the benefit of the same, if passed into a law, unless the creditors would close with their term of compromise offered. These preferences, therefore, thus given after the 1st of Jan. 1841, and also after the passage of said law, and its going into operation, were in contravention of the express provisions of the 2d and 4th sections, and are necessarily fatal to the application for the discharges.

The court therefore deny the application for discharge in both cases, with costs.